**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:22-cr-00142-RFB-BNW |
| Plaintiff, | |
| v. | **ORDER** |
| MEELAD DEZFOOLI, | |
| Defendant. | |

The Government filed a motion on October 6, 2023, alleging that Defendant, Meelad Dezfooli, had violated conditions of his pretrial release. ECF No. 64. Mr. Dezfooli responded October 19, 2023. ECF No. 66. The Court held a hearing on October 23, 2023.[1] Mr. Dezfooli filed a supplemental brief on October 24, 2023. ECF No. 68. The Government filed a supplemental brief on October 25, 2023. ECF No. 71. This Court held two more hearings on October 25 and 26, 2023. ECF Nos. 72 and 75. In accordance with this Court's Order on October 26, 2023, the parties filed supplemental briefs on November 1, 2023. ECF Nos. 77 and 78. An additional supplement was filed by the Government alleging more violations of pre-trial release since the original motion to revoke was filed. ECF No. 82. Mr. Dezfooli responded. ECF No. 83.

As explained in detail below, this Court finds the Government has met its burden in this case, warranting the detention of Mr. Dezfooli. This Court has not considered the briefs at ECF No. 82 and 83 in making this decision given those are new allegations for which no proof has been adduced.

///

///

---

[1] Mr. Dezfooli had no objection to the Government proceeding by way of proffer. In addition, this Court was incorrect in its belief that the hearing could not proceed in such manner. *United States v. Davis*, 845 F.2d 412, 415 (2d Cir. 1988) (holding it was not an abuse of discretion for the district court to permit the government to proceed by proffer alone).

## I. Procedural background

An Indictment was filed on June 22, 2022, charging Mr. Dezfooli with Bank Fraud, Money Laundering, and Monetary Transactions in Criminally Derived Property. The Indictment alleges Mr. Dezfooli defrauded financial institutions of $11.2 million by lying on application forms to obtain funds from the COVID-19 relief Paycheck Protection Program (PPP), and that he concealed and spent the fraudulently obtained money through a series of transactions.[2]

Mr. Dezfooli made his initial appearance in court on July 11, 2022, and was released subject to conditions.

On February 17, 2023, Pretrial Services filed a Petition to Revoke Mr. Dezfooli's release. ECF No. 50. On March 2, 2023, this Court held a hearing and found Mr. Dezfooli had violated conditions of release by not providing certain bank statements to Pretrial Services. ECF No. 52. After clarifying what was expected of him, Mr. Dezfooli was continued on release. *Id*.

The Government is now moving to revoke Mr. Dezfooli's release. ECF No. 64. As relevant here, Mr. Dezfooli's release conditions included (1) not violating any federal, state, or local laws; (2) no gambling; and (3) not transferring, assigning, disposing, removing, concealing, pledging as collateral, wasting or destroying property with the effect of hindering, delaying, or defrauding the United States and not devaluing property worth more than $5000 absent a court order and without the prior approval of Pretrial Services. ECF No. 13 (PR Bond). The Government alleges that (1) there is probable cause to believe Mr. Dezfooli violated federal law by engaging in money laundering and (2) there is clear and convincing evidence that he also violated the remaining two conditions.

## II. Analysis

18 U.S.C. § 3148 applies to revocations of pretrial release. The statute requires that the Court enter an order revoking and detaining the Defendant if it,

(1) finds that there is--

---

[2] These loans are guaranteed by the Small Business Administration.

(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

(B) clear and convincing evidence that the person has violated any other condition of release;

and

(2) finds that--

(A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community;

or

(B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148.

That statute also provides:

If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community.

*Id*.

This statute has been construed to involve a two-step process. At the first step, the Court must determine whether there is "probable cause to believe that the person has committed a Federal, State or local crime while on release," or whether there is "clear and convincing evidence that the person has violated any other condition of release." *Id.* § 3148(b)(1). The burden of proof at this step is on the government. *United States v. Petersen*, No. CRM 2008-0022, 2009 WL 1514402, at *1 (D.V.I. May 29, 2009).

At the second step, the Court "shall" enter an order revoking pretrial release if it finds either that "based on the factors set forth in section 3142(g) ... there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger

to the safety of any other person or the community" or that "the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b)(2). Several courts have previously found that "[t]he determination of whether there is no condition or combination of conditions of release that will assure that Defendant will not flee or pose a danger to the safety of any other person or the community or that he is unlikely to abide by any condition or combination of conditions of release under section 3148(b)(2) may be established by a preponderance of the evidence." *United States v. Patterson*, No. 1:19-CR-00230-DAD-BAM-1, 2020 WL 6200164, at *9 (E.D. Cal. Oct. 22, 2020) (*citing United States v. Gotti*, 794 F.2d 773, 778 (2d Cir. 1986); *see also United States v. Damato*, No. 2:20-MJ-00221-DJA-1, 2020 WL 2088100 * at 2 (D. Nev. Apr. 29, 2020) (noting "the Second Circuit has ... [held] 'findings made under section 3148(b)(2) may be established by a preponderance of the evidence[,]' " and that "[t]he analysis and rationale as to why the government's burden of proof is a preponderance of the evidence under § 3148 in *Gotti* is persuasive to this Court.").

If the Government establishes probable cause to believe the individual "committed a Federal, State, or local felony" while on pretrial release, then "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." *Id*. § 3148(b).

The Tenth and D.C. Circuits have held that the presumption under § 3148 is to be applied in the same manner as it is applied under § 3142. *United States v. Cook*, 880 F.2d 1158 (10th Cir. 1989); *United States v. Manafort*, 897 F.3d 340 (D.C. Cir. 2018). That is, once the presumption that no conditions can be fashioned arises, the burden of production—but not persuasion—shifts to the Defendant. *Cook*, 880 F.2d at 1162. The burden of production "is not heavy…but in order to rebut [it], the defendant must produce some evidence." *Id*. Once Defendant meets the burden of production, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

Lastly, if there is probable cause to believe the released defendant has committed a crime, "he may thereafter be detained upon a finding, by only a preponderance of the evidence, that no

conditions of release will guard against flight or dangerousness or that the person is unlikely to abide by any release condition." *United States v. Gotti*, 794 F.2d 773 (2d Cir. 1986).[3]

### A. Findings

#### i. There is probable cause to believe Mr. Dezfooli engaged in money laundering, thereby violating federal law

Condition No. 1 states: "The defendant must not violate federal, state, or local laws while on release." ECF No. 13.

The Government argues there is probable cause to believe Mr. Dezfooli engaged in money laundering when he sold five properties it alleges were acquired with fraudulently obtained PPP loans.

The essential elements of money laundering under 18 U.S.C. § 1957 include the following: (1) the defendant knowingly engaged or attempted to engage in a monetary transaction; (2) the defendant knew the transaction involved criminally derived property; (3) the property had a value greater than $10,000; (4) the property was, in fact, derived from a specified unlawful activity [including bank fraud]; and (5) the transaction occurred in the United States. Ninth Cir. Model Crim. Jury Instr. 8.150.

Probable cause exists where the "available facts suggest a fair probability that the suspect has committed a crime." *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006); *see also United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011) ("Probable cause means only a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances.").

This Court finds there is probable cause to believe Mr. Dezfooli engaged in money laundering.

As to the first element, the Government proffered (and Mr. Dezfooli does not contest) he sold the five properties in question.

---

[3] The Ninth Circuit has not spoken on this issue. The analysis and rationale as to why the government's burden of proof is a preponderance of the evidence under § 3148 in *Gotti* is persuasive to this Court.

As to the second element, there is evidence that Mr. Dezfooli knew the transaction involved criminally derived property. To begin, absent fraud on the grand jury or some similar process flaw, a grand jury indictment conclusively demonstrates probable cause at the time of the indictment. *See Kaley v. United States*, 571 U.S. 320, 328 (2014) (citing *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)). Here, the Indictment alleges Mr. Dezfooli made false representations to obtain PPP loans. Thus, there is probable cause to believe that loans were fraudulently obtained. The Government proffered that the sale of the five properties in question were traced back to PPP loan proceeds.[4] Thus, there is probable cause to believe that Mr. Dezfooli knew the transactions involved criminally derived property.

Turning to the third element, the properties all had a value greater than $10,000.

Fourth, as mentioned above, the Government proffered that these properties were purchased from proceeds of PPP loans.

And last, the transactions occurred in the United States.

This Court considered Mr. Dezfooli's proffer that that *he did not know* the transactions involved *criminally derived property* (elements No. 2 and 4), which is consistent with his "not guilty" plea. As explained above, the Indictment serves as probable cause to believe Mr. Dezfooli made fraudulent representations to obtain the loans.

This Court also considered that Mr. Dezfooli spoke with Pretrial Services and was told he could sell properties not listed in the Indictment "so long as it was lawful." Mr. Dezfooli argues he relied on Pretrial Services' statement when deciding to sell these properties, thus mitigating his actions. But the operative phrase Pretrial Services used is "so long as it was lawful." Even if this Court were to credit his reliance on Pretrial Services for the actions he undertook, such reliance does not bear *on the probable cause analysis*. Instead, as suggested by defense counsel, it may play a role in his *defense* should a Superseding Indictment be filed charging this specific conduct.

---

[4] Mr. Dezfooli argues that since only a proffer (and no other proof) was offered showing that the proceeds of the sale of the properties could be traced to criminally derived property, this Court should limit the amount of weight it puts on the proffer. But the advantage of proceeding by way of proffer is that the Government need not put any other proof. If Mr. Dezfooli wanted to challenge the accuracy of this proffer (such that this Court could determine how much weight to give it) he could have requested the opportunity to examine witnesses. He did not do so.

  **ii.**  <u>**There is clear and convincing evidence that Mr. Dezfooli gambled**</u>

Condition No. 70 states: "The defendant shall refrain from gambling…" ECF No. 13. The Court finds by clear and convincing evidence that Mr. Dezfooli gambled, in violation of his release conditions. *See* Gov. Ex. 7, 8, 11 and 12.

  **iii.**  <u>**There is no clear and convincing evidence that Mr. Dezfooli violated the remaining condition**</u>

Condition No. 80 states: "Defendant agrees not to transfer, assign, dispose, remove, conceal, pledge as collateral, waste or destroy property with the effect of hindering, delaying, or defrauding the United States or victims. Defendant otherwise shall not devalue any property worth more than $5000 absent further court order, without the prior approval of Pretrial Services." ECF No. 13.

  **a.**  <u>**Not transferring, assigning, disposing, removing, concealing, pledging as collateral, wasting or destroying property with the effect of hindering, delaying, or defrauding the United States**</u>

Mr. Dezfooli conceded he sold the properties in question, thus transferring them. The question is whether the sale had "the effect of hindering, delaying, or defrauding the United States." For this Court to find by clear and convincing evidence that the sale had this effect, this Court would first have to find by clear and convincing evidence that the properties sold were acquired with the proceeds of fraudulently obtained PPP loans. As mentioned above, the Indictment serves as probable cause to believe Mr. Dezfooli fraudulently obtained PPP loans. The Government proffered these properties were acquired with the proceeds from such fraudulently obtained loans. Mr. Dezfooli proffered no fraud was at play. In the absence of additional evidence, this Court cannot find there is *clear and convincing evidence* that the sale of these properties would have the stated effect.[5]

///

---

[5] This Court stated during the October 26, 2023, hearing that it had found Mr. Dezfooli had violated this portion of the condition. Upon further reflection, and based on the stated reasons above, this Court does not believe he has.


### b. Devaluing property worth more than $5000

This Court does not find that Mr. Dezfooli violated this condition by clear and convincing evidence given his understanding of the condition. Pretrial Services explained during the hearing that the example provided to Mr. Dezfooli was that he could not sell a car for $5 if the acquired price was $500. Thus, the Government has not met its burden to show that the sale of the properties would fall within this condition.

### B. Application of § 3148 (1)(A) + presumption

As stated above, this Court finds the Government has met its burden of showing there is probable cause to believe Mr. Dezfooli committed money laundering while on release. Thus, a rebuttable presumption arises that no condition or combination of conditions will assure that, as relevant here, he will not pose an economic danger to the community.[6] *United States v. Reynolds*, 956 F.2d 192 (9th Cir. 1992) (holding that danger to the community may encompass pecuniary or economic harm).

The Court finds that Mr. Dezfooli has met his burden of production, which is not a heavy one, by proffering he has no other properties to sell. Thus, this Court moves on to the same analysis it would under § 3142: it weights the factors listed in § 3142(g) along with the presumption, which "remains … as an evidentiary finding militating against release." *Hir*, 517 F.3d at 1086.

#### i. Nature and circumstance of offense charged

Mr. Dezfooli is charged with several counts of Bank Fraud, Money Laundering, and Monetary Transactions in Criminally Derived Property. The amount in question exceeds $11 million. These are undoubtedly serious offenses for which Mr. Dezfooli faces up to 30 years of imprisonment. *See* 18 U.S.C. § 1344.

---

[6] As made clear by the Government during the October 26, 2023, hearing, the only issue is whether conditions of release can be fashioned to address the issue of economic danger to the community.

As explained above, this Court has also found probable cause to believe Mr. Dezfooli continued to engage in criminal conduct while on pretrial release. Specifically, that he sold properties acquired with proceeds from the PPP loans.

### ii. Weight of the Evidence

This Court does not have much information in this regard as the Government did not originally move for detention. Based on the proffers made during the hearings, it appears that the Government has considerable evidence against Mr. Dezfooli. This Court acknowledges this is the least important factor. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

### iii. History and Characteristics of Mr. Dezfooli

Mr. Dezfooli has strong ties to this community—he has lived here since the late nineties. He has lived with his mother and sister, at the same residence since 2003 or 2004, and is able to reside there. He also has additional family in the community. While he has a passport, it has been surrendered to Pretrial Services. He also reports being gainfully employed.

He gambles, and continued to do so while on release even though he was prohibited from doing so. Of note, evidence was presented that (in addition to gambling himself) Mr. Dezfooli was using other individual's player's cards and giving money to others to ostensibly gamble for him.

He does not appear to have any current health issues.

As far as his criminal history is concerned, most of it is stale (including his failure to appear in 2015) and is otherwise not particularly concerning.

While he was in possession of some firearms, those have been surrendered.

### iv. Danger to Any Person or the Community

As noted above, this Court found probable cause that Mr. Dezfooli engaged in money laundering by selling five properties (for $2.3 million) that were acquired from the PPP loans while on supervision. Mr. Dezfooli was aware that he was not to sell the properties listed on the Indictment given the allegation that those properties had been purchased with ill-gotten gains. The Government proffered that all properties (including those that were not listed in the

Indictment) were purchased in the same manner. Yet, Mr. Dezfooli chose to sell the properties not listed in the Indictment and cash out, thereby continuing to engage in criminal conduct.

*****

There is not much guidance by the Ninth Circuit regarding the type of conduct that is encompassed by the term "economic harm." This Court agrees with *United States v. Madoff,* in that the dissemination of assets likely does not rise to the required level to be cognizable as "economic harm." 586 F. Supp. 2d 240 (S.D.N.Y. 2009). But this case involves more than disseminating assets: there has been a finding of probable cause that Mr. Dezfooli engaged in additional criminal acts and there is evidence suggesting a pattern of deceptive practices, which includes the failure to record the real estate deeds in a timely fashion to avoid detection of the properties at issue. In addition, and as discussed more fully below, this case is in a different procedural posture than the *Madoff* case.

This Court notes there is a crucial difference between § 3142 and § 3148. The former states that the conditions need only "*reasonably* assure," as relevant here, the economic safety of the community. In contrast, § 3148 states that the Court "shall enter an order of revocation and detention" if no combination of conditions "will *assure*," as relevant here, the economic safety of the community. Thus, the question here is whether it is "more likely than not" that no conditions can be fashioned to "assure" the economic safety of the community.

This Court also notes that at the time the hearing took place on October 23, 2023, Pretrial Services recommended that Mr. Dezfooli be admonished and continued on the same conditions of release. As explained during the hearing on October 25, 2023, that recommendation did not consider whether Mr. Dezfooli had (or had not) engaged in money laundering while on release. That was based on the fact the Government requested the revocation hearing (not Pretrial Services) and had not investigated the allegation that he had committed money laundering. At the October 25, 2023, hearing, Pretrial Services did not take any position as to whether conditions could be fashioned in this case.

After weighing the factors listed in § 3142(g) along with the presumption, which "remains…as an evidentiary finding militating against release", this Court finds the Government

has met its burden to show by a preponderance of the evidence that no combination of conditions will *assure* the economic safety of the community. Even if Mr. Dezfooli has no more properties to sell, he has demonstrated the ability and willingness to conceal information to continue profiting from the alleged crime (by committing new crimes) such that no combination of conditions will assure he will not pose an economic danger.

Given this finding, this Court need not engage in any other findings to find that Mr. Dezfooli must be detained.

### D.   Conclusion

**IT IS ORDERED** that the Government's Motion to Revoke Pretrial Release and Detain Defendant Pending Trial (ECF No. 64) is **GRANTED**;

**IT IS FURTHER ORDERED** that Mr. Dezfooli will be detained in this case pending trial. He is to self-surrender to the United States Marshals' Office by noon on November 20, 2023.

DATED: November 16, 2023.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE