UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>          Plaintiff<br><br>v.<br><br>Meelad Dezfooli,<br><br>          Defendant | Case No. 2:22-cr-00142-CDS-DJA<br><br>**Order Denying Defendant's Motion for Judgment of Acquittal or, in the Alternative, Motion for a New Trial**<br><br>[ECF No. 331] |

      On September 5, 2024, at the conclusion of a six-day trial, a jury returned a guilty verdict on all counts against defendant Meelad Dezfooli. Verdict, ECF No. 242. Dezfooli was charged in a superseding indictment with three counts of bank fraud, three counts of money laundering, and four counts of engaging in monetary transactions involving criminally derived property after an investigation revealed he was involved in Paycheck Protection Program (PPP) loan fraud during the Covid-19 pandemic. Superseding indictment, ECF No. 97. Dezfooli moves for judgment of acquittal, or in the alternative, for a new trial. Mot., ECF No. 331. The government opposes the motion. Opp'n, ECF No. 337.[1] For the reasons set forth herein, Dezfooli's motion is denied.

I.     Legal standard

    A. **Judgment of acquittal under Fed. R. Crim. P. 29(c)**

      Federal Rule of Criminal Procedure 29 provides that "the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). When evaluating a motion for judgment of acquittal the court "review[s] the evidence presented against the defendant in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hernandez-Herrera*, 273

---

[1] Despite granting Dezfooli two extensions to submit a reply, he did not do so prior to the deadline. *See* First stip. to extend, ECF No. 340; Second stip. to extend, ECF No. 355.

F.3d 1213, 1218 (9th Cir. 2001). Further, "it is not the district court's function to determine witness credibility when ruling on a Rule 29 motion[,]" *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002), as those conditions are within the exclusive function of the jury. *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977). Rather, "after viewing the evidence in the light most favorable to the government," the relevant question is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Cordova Barajas*, 360 F.3d 1037, 1040 (9th Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). If a rational trier of fact could find the essential elements of the crime(s) beyond a reasonable doubt, then motion must be denied. *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc).

       **B.   Motion for a new trial under Fed. R. Crim. P. 33**

Federal Rule of Criminal Procedure 33(a) states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." *United States v. Xi Andy Lieng*, 548 F. App'x 397, 399 (9th Cir. 2013). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal," and the court may thus weigh the evidence itself and judge the credibility of witnesses. *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992).

**II.   Discussion**

It is well-established that when ruling on a Rule 29 motion, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Alarcon-Simi*, 300 F.3d at 1176. Dezfooli fails to demonstrate that any rational trier of fact, when evaluating the evidence presented at trial and viewed in a light most favorable to the government, would not have found that the essential elements of each offense charged were

proven beyond a reasonable doubt. Indeed, although the government introduced close to 500 exhibits, [2] as explained below, the evidence supporting the guilty verdict was rather succinct.

### A. Dezfooli's motion for judgment of acquittal is denied.

*1. The evidence supports that a rational jury could have convicted Dezfooli of bank fraud as charged in counts one through three of the superseding indictment.*

Dezfooli was charged in counts one through three of the superseding indictment with violations of Title 18, United States Code, Section 1344(2). ECF No. 97 at 13. To be found guilty of that charge, the government needed to prove the following elements beyond a reasonable doubt: (1) that Dezfooli knowingly carried out a scheme or plan to obtain money or property from the charged financial institutions by making false statements or promises; (2) that Dezfooli knew that the statements or promises were false; (3) that the statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, the financial institutions to part with money or property; (4) that Dezfooli acted with the intent to defraud; and (5) that the charged financial institutions were federally chartered or insured. *See* Ninth Cir. Crim. Jury Instr. 15.39 (2025).[3] The evidence introduced demonstrates that a rational trier of fact could undoubtedly have convicted Dezfooli on all three counts of bank fraud.

Indeed, the evidence revealed that starting in April of 2020, Dezfooli knowingly carried out a scheme or plan to obtain money when he submitted three PPP loan[4] applications to FDIC

---

[2] *See* Final Gov't Ex. list, ECF No. 247.
[3] This instruction was last revised in 2021.
[4] PPP stands for the Paycheck Protection Program, which was created in 2020 by Congress in the early part of the Covid-19 pandemic crisis as part of the Coronavirus Aid Relief and Economic Security Act (CARES). *See* Trial tr. 2, 8/27/24, ECF No. 308 at 32. PPP loans were a new forgivable type of loan created through, and backed by, the Small Business Administration (SBA). *Id.* at 33–34.

financial institutions,[5] for three separate businesses:[6] Best Floors[7], A-Series LLC[8], and Nevada Sales Limited[9]. Each application went through a verification process, requiring the applicant to submit proof of identification and bank account information.[10] For each application, Dezfooli did just that: he submitted personal identifying documentation,[11] such as a copy of his driver's license,[12] and he represented himself as the CEO, manager, owner, or some combination of positions, for each purported business.[13]

Dezfooli's argument that because the government did not prove with direct evidence that it was Dezfooli, and not some other unknown actor,[14] that submitted the applications is unavailing for two reasons. First, as it relates to the PPP loan for Best Floors, obtained from First Saving Bank (FSB), Dezfooli was a known customer to that bank. Importantly, while Dezfooli

---

[5] Trial tr. 1, 8/27/24, ECF No. 308 at 142 (First Savings Bank FDIC insured in 2020); Trial tr. 3, 8/28/24, ECF No. 309 at 58 (U.S. Bank was FDIC insured in April of 2020); *id.* at 197 (Cache Valley Bank was FDIC insured in April of 2020); *see also* Gov't Ex. 17 (FDOC records confirming all three financial institutions were FDIC insured at the time Dezfooli took out the PPP loans).

[6] Each company's business registration with the State of Nevada was either revoked, in default, or expired between 2019 and 2020. *See* Trial tr. 2, 8/27/24, ECF No. 308 at 112–32 (witness testifying about the process to register a business in the State of Nevada, and that Best Floor's registration was revoked in 2019, that A-Series LLC was in default in May of 2020, and that Nevada Sales was in default in September 2020).

[7] *See* ECF No. 247, Gov't Exs. 101–15 (Best Floor Loan Documents).

[8] *Id.* at Gov't Exs. 200–22 (A-Series Loan Documents).

[9] *Id.* at Gov't Exs. 300–30 (Nevada Sales Ltd. Loan Documents).

[10] A witness from the SBA testified that the PPP program permitted banks to rely on the information by PPP loan applicants to determine eligibility and underwriting decisions, and that applicants were permitted to certify information contained in their loan applications. *See* Trial tr. 2, 8/27/24, ECF No. 308 at 38–41.

[11] Trial tr. 2, 8/27/24 at 154–67 (First Savings Bank (FSB) testifying about Dezfooli's driver's license, signature cards for Dezfooli, and the email, dez@bestbuyfloor.com, that were part of the PPP loan application); Trial tr. 3, 8/28/24, ECF No. 309 at 78 (U.S. Bank witness testifying that a Meelad Dezfooli submitted a loan application using email address dez@bestbuyfloor.com and phone number 702-502-8981); *id.* at 223 (Cache Bank witness testifying that Dezfooli submitted a copy of his driver's license in his PPP loan application); Trial tr. 4, 8/29/24, ECF No. 310 at 19–20 (Cache Bank witness testifying about bank's attempt to contact Dezfooli at phone number 702-502-8981).

[12] *See* Trial tr. 3, 8/28/24, ECF No. 309 at 94–96 (witness identifying and testifying about copy of driver's license and "selfie" submitted to U.S. Bank by Meelad Dezfooli as part of loan application).

[13] *See, e.g.*, Trial tr. 2, 8/27/24, ECF No. 308 at 53 (witness testifying the Best Floors application identified Dezfooli as the sole owner); Trial tr. 4, 8/29/24, ECF No. 310 at 13 (Dezfooli identified on Nevada Sales Ltd. PPP loan application as manager with 100% ownership interest).

[14] *See* Mot., ECF No. 331 at 6–9.

4

applied for the FSB application online, the trial testimony established that Dezfooli signed, in person, a signature card to replace the Docusign loan documents in July 2020. Trial tr. 2, 8/27/2024, ECF No. 308 at 197. Moreover, Dezfooli signed a modification to one loan in person. *See* Trial tr. 3, 8/28/24, ECF No. 309 at 49. That is direct evidence that it was, in fact, Dezfooli who obtained the original loan from FSB. Second, while Dezfooli was not a known customer of either U.S. Bank or Cache Bank, circumstantial evidence demonstrated beyond a reasonable doubt that Dezfooli was the person who applied for, and received the funds from, the PPP loans from those two financial institutions.[15]

Dezfooli obtained[16] ever-increasing funds from each fraudulent loan application submitted, from over $1,000,000 for Best Floors, to almost $1.5 million for A-Series, to just shy of $8.7 million for Nevada Sales.[17] In total, banks dispersed $11,231,186.52 in PPP loan funds to Dezfooli. Witnesses from each bank where Dezfooli submitted the PPP loan applications testified they would not have approved the applications if they knew the documentation submitted to support the loan contained fictious information.[18]

---

[15] That circumstantial evidence includes copies of his driver's license, the email addresses contained the name "dez," and his personal cell number that were all included as part of the applications, as well as the evidence of the funds going into and out of his bank accounts, and the fact the Dezfooli was flush with cash after the fraudulent loans were disbursed. And witnesses testified that the defendant went by the name "Dez." Trial tr. 3, 8/28/24, ECF No. 309 at 11; Trial tr. 4, 8/29/24, ECF No. 310 at 143–44.

[16] *See* Gov't Ex. 469 (Dezfooli's bank account information).

[17] For Best Floors, Ltd, $1,093,606.52 in PPP loans were disbursed to Dezfooli on April 20, 2020. Trial tr. 2, 8/27/24, ECF No. 308 at 168–96; Gov't Ex. 101. For A-Series LLC, $1,464,781 in PPP loan funds were disbursed to Dezfooli on May 6, 2020. *See* Trial tr. 3, 8/28/24, ECF No. 309 at 79–80; Gov't Exs. 200–01. And for Nevada Sales Limited, $8,672,800 in PPP loan funds were disbursed to Dezfooli on May 8, 2020. *See* Trial tr. 4, 8/29/24, ECF No. 310 at 12; Gov't Ex. 300.

[18] Trial tr. 2, ECF No. 308 at 152–54 (FSB witness testifying it would have approved the loan without certifications); Trial tr. 3, 8/28/24, ECF No. 309 at 63–68 (U.S. Bank witness testifying that misrepresentations and certifications in PPP loan applications matter because it impacted how much an applicant received, applicant eligibility, and whether loan would be approved), *id.* at 90–91 (same witness testifying about fictious utility bill emailed to U.S. Bank from email address dez@bestbuyfloor.com that was used as part of the loan approval process); *see also* Trial tr. 2, 8/27/24, ECF No. 308 at 43 (SBA witness testifying that if applicants did not certify their applicants, lenders would not issue the loans); Trial tr. 3, 8/28/24, ECF No. 309 at 204–05 (Cache Bank witness testifying that if bank knew that a PPP loan application contained misrepresentations it would not have been approved).

Dezfooli was required to—and indeed did—certify that he was eligible to receive PPP loan funds,[19] and that those loan funds would only be used for payroll and business-related expenses.[20] But those certifications were false. The evidence also demonstrated that each loan application was submitted using fraudulent or falsified supporting documentation,[21] that they each contained material misrepresentations such as false and inflated numbers of employees working at the purported businesses,[22] to the amount of payroll paid to the alleged employees,[23]

---

[19] *Id.* at 59–60 (explaining that the PPP loan application required applicants to certify that "[t]he applicant is eligible to receive a loan under the rules in effect at the time that this application is submitted and I have been issued by the SBA implementing the Paycheck Protection Program under Division A, Title 1 of the CARES Act."). Eligibility included not having received another PPP loan between February 15, 2020, and December 31, 2020. *Id.* at 66 (Best Floors application including certification that "[d]uring the period beginning on February 15, 2020, and ending on December 31, 2020, the applicant has not and will not receive another loan under the Paycheck Protection Program"); *see also* Trial tr. 3, 8/28/24, ECF No. 309 at 80–81 (discussing certifications to Dezfooli's PPP loan for A-Series LLC); *id.* at 205–07, 218–20 (Cache Bank explaining importance and reliance on certifications).

[20] *See* Trial tr., 8/27/24, ECF No. 308 at 44–49 (SBA witness explaining the PPP loan application purpose and process); *id.* at 59 (explaining the PPP loan applicants and to certified that "[a]ll SBA loan proceeds will be used only for business related purposes as specified in the loan application and consistent with the Paycheck Protection Program rules").

[21] *See, e.g.*, Gov't Ex. 302 (purported Nevada Energy bill submitted as part of loan application); *see also* Trial tr. 3, 8/28/24, ECF No. 309 at 129–32 (witness comparing verified NV Energy bill to purported NV Energy bill that was created "outside" NV Energy's billing system); *compare also* Trial Tr. 4, 8/29/2024, ECF No. 310 at 99–100 (IRS witness explaining Best Floors did not submit any federal tax returns after 2018), *with id.* at 104–09 (IRS witness saying 2019 tax returns submitted for PPP loan for Best Floors were never filed with IRS); Trial tr. 5, 8/30/24, ECF No. 311 at 95–96 (former employee of Dezfooli who testified they did not know any employee with the names and signatures on purported IRS Form 940s); *id.* at 156–67 (witness identifying her former address and part of her name and titled as "manager" on Nevada Design LLC paperwork, a business she had never heard of nor did she authorize anyone to file documents on her behalf, denying being a signatory on a Wells Fargo account for that same company, and denying receiving over eight million dollars in PPP loan funds into that bank account).

[22] *See, e.g.*, Trial tr. 5, 8/30/25, ECF No. 311 at 85–100; 143–45; 161; 206 (witnesses testifying about approximate number of employees working for Best Floors, Ltd. during relevant time, which were far less than listed in PPP loan application); *see also* Trial tr. 4, 8/29/24, ECF No. 310 at 42–58; 72–73 (witness from Nevada's Department of Employment, Training, and Rehabilitation (DETR) who collects unemployment insurance tax and other records for the state, testified that A-Series LLC reported between four and ten employees in 2020, Best Floors Ltd. reported between zero to one employee for 2018 and no reports after 2018, and there were no records for a Nevada Sales Ltd. or Nevada Design Ltd.)

[23] The Best Floors, Ltd. application claimed seventy-six total employees, resulting in $437,442.61 in monthly payroll. *See* Trial tr., 8/27/24, ECF No. 308 at 50–51. The A-Series LLC application claimed ninety-six total employees, resulting in $585,912 in monthly payroll. *See* Trial tr., 8/28/24, ECF No. 309 at 79:2–80:15; Gov't Exs. 200–01. The Nevada Sales Limited application claimed 477 total employees, resulting in $3,469,142 in monthly payroll. *See* ECF No. 309, Trial tr. 3, 8/28/24, ECF No. 309 at 214:18–21; Gov't Ex. 300.

to false addresses associated with one of the businesses,[24] to an altered utility bill as part of the loan verification process for the A-Series LLC.[25] The certifications and fake or false documentation were material and influenced each victim-bank to approve Dezfooli's PPP loans. *See United States v. Cloud*, 872 F.2d 846 (9th Cir. 1989) (Defendant's conviction for bank fraud was supported by sufficient evidence showing that defendant signed mutual escrow instructions knowing that they contained materially false representations as to sale price and down payment figures).

Thus, contrary to Dezfooli's argument,[26] the evidence demonstrates that the government provided more than sufficient evidence from which a rational jury could conclude that Dezfooli acted with the intent to defraud. *United States v. McNeil*, 320 F.3d 1034 (9th Cir. 2003) (evidence was sufficient to establish that defendant acted with specific intent required for bank fraud conviction, in connection with defendant's use of stolen identity while attempting to fraudulently obtain tax refund from IRS under stolen name; defendant used fake identification to open a bank account in stolen name, and misrepresented himself as person whose name he had stolen, amongst other acts). And Dezfooli's argument that he was unaware he was not allowed to claim "independent contractors" as "employees" on the loan applications is unavailing when viewing the evidence in the light most favorable to the government. That is because his argument that independent contractors were utilized was contradicted by admitted evidence. For example, the evidence showed that, at most, only Best Floors utilized independent contractors. Any suggestion that the other businesses utilized independent contractors was contradicted by filings with the State of Nevada.[27] Moreover, testimony from former Best Floors employees call into question just how many employees were utilized.[28] Thus, even accepting as

---

[24] *See* Gov't Exs. 200, 201; Trial tr. 3, 8/28/24, ECF No. 309 at 79–80.
[25] *See* Gov't Exs. 200, 3.02; *see also* Trial tr. 3, 8/28/24, ECF No. 309 at 129–31.
[26] *See* Mot., ECF No. 331 at 9–13.
[27] *See* Trial tr. 4, 8/29/24, ECF No. 310 at 49–50 (A Series LLC answered "no" to a question asking if independent contractors were used in a 2020 filing with the state).
[28] *See* Trial tr. 4, 8/29/24, at ECF No. 310 at 49 (witness testifying there were five to eight employees who worked at the business located at the 1621 East Sunset location).

true his argument that he did not comprehend the differences between employees and independent contractors for purposes of the applications, the evidence showed the PPP loan applications nonetheless contained materially false information about the number of employees, even counting independent contractors, because the numbers were never as high as what he claimed on the applications. *See, e.g.*, Trial tr. 4. 8/29/2024, ECF No. 310 at 49 (former employee of Best Floors testifying there were about five to eight employees back in 2019); *see also supra* p. 6 n.20.

Moreover, the evidence at trial also demonstrated that Dezfooli used the proceeds of his fraudulent loan applications for personal—not business—purposes and, in doing so, laundered the funds. Specifically, Dezfooli used part of the funds to makes numerous residential real estate purchases,[29] part of the funds to open a personal Robinhood investment account,[30] part of the funds to purchase a Bentley and a Tesla,[31] and part of the funds to gamble at local casinos.[32] *See also* Gov't Exs. 414.02, 415, 433, 434.05 (Dezfooli's deposit and/or wire information for accounts ending in x4756 and x2777).

Dezfooli's argument that there was no testimony demonstrating that he did not intend to use the PPP loan funds for non-business-related purposes is unconvincing as the evidence speaks for itself: it clearly demonstrated that Dezfooli used the PPP loan funds for his own gain, and not for business purposes as certified in the loan applications. Accordingly, Dezfooli's motion for judgment of acquittal for counts one through three is denied.

---

[29] *See, e.g.*, 6116 Chinook Way (as alleged in Count Four of the Superseding Indictment) and 180 Ruby Ridge Avenue (as alleged in Count Five of the Superseding Indictment); *see also* ECF No. 312, Trial tr. 6 at 125–28; Gov't Exs. 402.01; 403.01; 61, 463, 467, 478 (demonstrative aid showing all purchases); Trial tr. 6, ECF No. 312 at 149–54; *id.* at 164 (testimony that "25 houses were purchased with PPP funds").
[30] *See* Gov't Exs. 8.01–18 (records from Dezfooli's Robinhood account); Gov't Exs. 465, 471 (Robinhood Transfers).
[31] Gov't Ex. 12 (Bentley purchase records); Gov't Ex. 13 (Tesla purchase records).
[32] Gov't Ex. 466 (Front money deposit at The Cosmopolitan Casino); Gov't Ex. 470 (Casino Electronic Transfers); Gov't Exs. 484–86 (Cosmopolitan Exhibits).

    2. *The evidence supports that a rational jury could have convicted Dezfooli of money laundering in violation of 18 U.S.C. § 1956 as charged in counts four through six of the superseding indictment.*

Dezfooli's argument that the government failed to show Dezfooli had the requisite intent to conceal or disguise the fraudulently obtained funds also fails. *See* Mot., ECF No. 331 at 14–19. For these counts, the government was required to prove that Dezfooli conducted "a financial transaction involving property represented to be the proceeds of specified unlawful activity," knowing that the transactions were designed in whole or in part "to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(3)(B); *see also United States v. Singh*, 995 F.3d 1069, 1076 (9th Cir. 2021) ("The money laundering statute is violated if the transaction in question is 'designed in whole or in part' to conceal."). Here, the evidence shows the jury reasonably arrived at its verdict on the § 1956 violations alleged in counts four through six of the superseding indictment.

The intent to deceive, like any mens rea, is usually inferred from circumstantial evidence. *See United States v. Plache*, 913 F.2d 1375, 1381 (9th Cir. 1990); *Purdue Pharma L.P. v Endo Pharms. Inc.*, 410 F.3d 690, 700 (Fed. Cir. 2005). Indeed, "[c]ircumstantial evidence 'can be used to prove any fact,' although 'mere suspicion or speculation does not rise to the level of sufficient evidence.'" *United States v. Dinkane*, 17 F.3d 1192, 1196 (9th Cir. 1994) (quoting *United States v. Stauffer*, 922 F.2d 508, 514 (9th Cir. 1990)). As such, the relevant inquiry is "not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." *Id.* (quoting *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991)). The financial transactions that constituted the alleged money laundering in counts four through six of the superseding indictment were not simple.[33] As revealed during the trial, Dezfooli utilized

---

[33] Although the transactions conducted were not simple, the funds were nonetheless easily traceable. Thus, Dezfooli's argument that the government did not properly trace the fraudulent loan funds (*see* Mot., ECF No. 331 at 19–20) is unconvincing. The government presented sufficient evidence to demonstrate a reasonable jury could find that the PPP loan funds were linked to the purchases of the properties alleged in counts four through six of the superseding indictment. A witness from the IRS

business names to purchase the residential properties identified in the superseding indictment and registered on a website to make those purchases using an alias. *See, e.g.*, Trial tr. 4, 8/29/2024, ECF No. 310 at 203–04 (witnesses identifying paperwork for purchases involving refunds to "Sanam, Limited," and the remitter of a check as "James Dez"); *id.* at 204, 210, 214 (paperwork identifying "James Dez" as the purchaser's representative but also listing Melaad Dezfooli as primary contact for the transaction). Then, Dezfooli used cashier's checks to purchase those properties through a website identified as Auction.com. That website permits individuals to utilize cashier's checks, and if the cashier's check amount was higher than the purchase amount, the buyer would get a refund for the difference. *Id.* at 203–07. Stated otherwise, Dezfooli was able to disguise the PPP loan funds by purchasing the property with a cashier's check, and then through a secondary transaction, conceal the funds by receiving refunds for unused funds. Moreover, trial testimony revealed that issuing such large refunds,[34] though not unlawful or impossible, was not "typical." *Id.* at 211; 221–22.

      A rational juror could undoubtedly find Dezfooli's actions were designed to conceal or disguise "nature, location, source, ownership, or control" of the fraudulent loan funds. *See United States v. Wilkes*, 662 F.3d 524, 530 (9th Cir. 2011) (concluding that defendant's transfer of a mortgage payment to a congressman in exchange for a government contract was sufficient

---

provided detailed testimony regarding her review of Dezfooli's bank accounts, the loan disbursements, and the financial transactions (including real estate, casino, and vehicles) associated with Dezfooli. *See* Trial tr. 6, 9/3/24, ECF No. 312 at 75–223. As it relates to the transactions charged in counts six through nine, the witness stated that the Chinook property "was made with one cashier's check. That cashier's check was withdrawn from Wells Fargo bank 3281. At the time of the withdrawal, there was approximately $7.7 million of PPP money in the account and 0 other money from other -- other sources in the account." *Id.* at 125. That same witness testified that a cashier's check from the same account, with all PPP money, was utilized to purchase the Ruby Ridge property. *Id.* at 146–47. Last, the same witness testified the purchase for the Nelson Ridge Lane home was "a little more complicated" because there were five cashier's checks used for the transaction, and the funds were not drawn from the accounts the PPP loan funds were deposited into but were drawn on an account in the name of "Sanam Ltd." *Id.* at 149–50. Nonetheless, the witness was able to trace the funds in the Sanam Ltd. account as the "refund" funds Dezfooli received from homes that were purchases with PPP loan funds. *Id.* at 150–53, 165–66 (witness testifying that the money associated with all three properties originated with PPP money).

[34] *See, e.g.*, Trial tr. 4, 8/9/24, ECF No. 310 at 206 (Auction.com witness stating the refund for the Chinook property was "quite high").

because the funds were not transmitted directly, but rather were "convoluted" as to "mask the link before then funds and their source"). Stated otherwise, the jury could reasonably determine that Dezfooli conducted the transactions alleged in counts four through six in order to conceal or disguise the source of the purchasing funds, so Dezfooli's motion for judgment of acquittal is denied as to these counts.

>   3. *The evidence supports that a rational jury could have convicted Dezfooli of money laundering in violation of 18 U.S.C. § 1957 as alleged in counts seven through nine of the superseding indictment.*

Dezfooli's arguments that the government failed to meet its burden as to the § 1957 violations alleged in counts seven through nine also fail. Section 1957 provides that "(a) [w]hoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b)." 18 U.S.C. § 1957. Thus, the government must prove that the defendant knew the transactions at issue involved criminally derived property. *See United States v. Lonich*, 23 F.4th 881, 899 (9th Cir. 2022), *overruled on other grounds by United States v. Lucas*, 101 F.4th 1158 (9th Cir. 2024). Although the government must prove that the defendant knew the transactions involved criminally derived property, it need not prove that the defendant knew the act of money laundering itself is unlawful. 18 U.S.C. § 1957(a); *see also United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994).

Dezfooli's actions of (1) applying for the PPP loans using fake or false representations or documentation, then (2) receiving the funds, and thereafter (3) engaging in monetary transactions that exceeded $10,000 with the fraudulently obtained funds, sufficiently supports Dezfooli's convictions for counts seven through nine. Based on witness testimony tracing each transaction to the fraudulently obtained PPP loan funds, a rational jury could find that Dezfooli knowingly engaged in each charged financial transaction, each of which exceeded $10,000, and that those funds constituted or were derived from the bank fraud charged in counts one through three. *See, e.g.*, Trial tr. 6, 9/3/24, ECF No. 312 at 114 (witness testifying about a $225,000 check

from FSB account containing solely PPP loan funds, that was transferred into an account associated with A Series); *id.* at 172–73 (witness testifying about $39,985.29 transfer into Dezfooli's Robinhood account); *id.* at 175–76 (witness testifying about $110,602.40 cashier's check made out to Nevada Property 1—listing Dezfooli in the memo—that was then deposited into Dezfooli's account at The Cosmopolitan Hotel & Casino). Accordingly, Dezfooli's motion for judgment of acquittal for these counts is denied.

    4. *A rational jury could have convicted Dezfooli of count ten.*

  Title 18, United States Code, Section § 3147 imposes penalties for individuals who commit an offense while on release pending trial for other federal charges. 18 U.S.C. § 3147. As relevant here, the evidence introduced at trial demonstrated that Dezfooli was placed on pre-trial release[35] on July 11, 2022. Trial tr. 6, 9/3/24, ECF No. 312 at 154–55; *see also* Gov't Ex. 11.01 (appearance bond). A witness from the IRS further testified that after Dezfooli was released on that appearance bond, he sold the Nelson Ridge Lane residential property in January 2023. Trial tr. 6, 9/3/24, ECF No. 312 at 157–59. Specifically, $589,715.42 was wired into an account for Sanam Ltd., on January 4, 2023, and the person who signed as the "seller" for that transaction was Dezfooli, who was also listed as the manager for Sanam. *Id.* Trial evidence also demonstrated that the Nelson Ridge house was originally purchased with PPP loan money. *Id.* at 161. Thus, based on the evidence presented, a rational jury could determine that Dezfooli engaged in a violation of 18 U.S.C. § 1957 *after* he was placed on pre-trial release, which constitutes a violation of 18 U.S.C. § 3147(1). As a result, Dezfooli's motion for judgment of acquittal for count ten is denied.

  **B. Dezfooli's motion for a new trial pursuant to Rule 33 is denied.**

  Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 motions are generally disfavored and should only be granted in

---

[35] *See* Gov't Ex. 11.01 (Dezfooli's personal recognizance bond signed on July 11, 2022).

1 "exceptional" cases. *United States v. Del Toro–Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012) (citing *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981)). The heavy burden of proving a new trial is warranted rests with the defendant. *See United States v. Halali*, 2017 WL 3232566, at *2 (N.D. Cal. July 28, 2017) (quoting *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009)).

Dezfooli fails to carry his heavy burden here. He presents no new arguments, other than those set forth in support of his Rule 29 motion, that would convince me that it is in the interests of justice to grant a new trial, much less that this is the exceptional case warranting one. Rather, after weighing the evidence and the credibility of the witnesses, there was no miscarriage of justice. As a result, Dezfooli's motion for a new trial is denied.

### III.   Conclusion

IT IS HEREBY ORDERED that Dezfooli's motion for judgment of acquittal, or in the alternative, motion for a new trial [ECF No. 331] is DENIED.

Dated: July 14, 2025

_____
Cristina D. Silva
United States District Judge