# UNITED STATES DISTRICT COURT

District of Nevada

| | |
|---|---|
| UNITED STATES OF AMERICA | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| MEELAD DEZFOOLI | Case Number:  2:22-cr-00142-CDS-DJA |
| | USM Number:  10231-510 |
| **Date of Original Judgment:**  8/21/2025 | Lucas Gaffney, CJA |
| *(Or Date of Last Amended Judgment)* | Defendant's Attorney |

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☑ was found guilty on count(s)    1, 2, 3, 4, 5, 6, 7, 8, 9, 10 of the Superseding Indictment ECF No. [97]
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1344(2) | Bank Fraud | 5/1/2020 | 1-3 |
| 18 U.S.C. § 1956(a)(1)(B) | Concealment Money Laundering | 7/14/2021 | 4-6 |
| 18 U.S.C. § 1957, 1957( | Monetary Transactions in Criminally Derived Property | 12/26/2020 | 7-9 |

    The defendant is sentenced as provided in pages 2 through ___8___ of this judgment.  The sentence is imposed pursuant to
the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____  ☐ is  ☐ are dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence,
or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution,
the defendant must notify the court and United States attorney of material changes in economic circumstances.

8/21/2025
Date of Imposition of Judgment

Signature of Judge

Cristina D. Silva, United States District Judge
Name and Title of Judge

12/10/2025
Date

AO 245C (Rev. 11/23)  Amended Judgment in a Criminal Case
Sheet 1A
(NOTE: Identify Changes with Asterisks (*))

DEFENDANT: MEELAD DEZFOOLI
CASE NUMBER: 2:22-cr-00142-CDS-DJA

Judgment — Page __2__ of __8__

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1957, 18 U.S.C. § 1957(b) and 3147 | Monetary Trasactions in Criminally Derived Property | 1/4/2023 | 10 |

AO 245C (Rev. 11/25)   Amended Judgment in a Criminal Case
Sheet 2 — Imprisonment
(NOTE: Identify Changes with Asterisks (*))

Judgment — Page   3   of   8

DEFENDANT: MEELAD DEZFOOLI
CASE NUMBER: 2:22-cr-00142-CDS-DJA

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of :
180 months per each count, counts 1-6; and 120 months per each count, counts 7-10; all counts concurrent; plus 1 month to run consecutive to all counts for the 18 U.S.C. § 3147 violation for an aggregate sentence of 181 months. Further, the Court recommends residential drug treatment.

☑  The court makes the following recommendations to the Bureau of Prisons:
   The Court recommends the Defendant to be permitted to serve his term of incarceration in Maryland or Virginia or as close to there as possible.

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

   ☐  at  _____  ☐  a.m.  ☐  p.m.   on  _____ .

   ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐  before 2 p.m. on  _____ .

   ☐  as notified by the United States Marshal.

   ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on  _____  to  _____

at  _____  with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

AO 245C (Rev. 11/23)   Amended Judgment in a Criminal Case
Sheet 3 — Supervised Release                                                      (NOTE: Identify Changes with Asterisks (*))

Judgment—Page ___4___ of ___8___

DEFENDANT: MEELAD DEZFOOLI
CASE NUMBER: 2:22-cr-00142-CDS-DJA

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

 5 years, per each count, counts 1-3; and 3 years per counts 4-10; all counts concurrent.

# MANDATORY CONDITIONS

1.    You must not commit another federal, state or local crime.
2.    You must not unlawfully possess a controlled substance.
3.    You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court, not to exceed 104 tests annually.
         ☐    The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☑    You must make restitution in accordance with 18 U.S.C. § 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☑    You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐    You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐    You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

Judgment—Page      5      of      8

DEFENDANT: MEELAD DEZFOOLI
CASE NUMBER: 2:22-cr-00142-CDS-DJA

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

# U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

AO 245C (Rev. 11/25)   Amended Judgment in a Criminal Case
Sheet 3D — Supervised Release                                                    (NOTE: Identify Changes with Asterisks (*))

Case 2:22-cr-00142-CDS-DJA   Document 405   Filed 12/10/25   Page 6 of 30

Judgment—Page   6   of   8

DEFENDANT: MEELAD DEZFOOLI
CASE NUMBER: 2:22-cr-00142-CDS-DJA

## SPECIAL CONDITIONS OF SUPERVISION

1. Access to Financial Information – You must provide the probation officer access to any requested financial information and authorize the release of any financial information. The probation office will share financial information with the U.S. Attorney's Office.

2. Debt Obligations – You must not incur new credit charges, or open additional lines of credit without the approval of the probation officer.

3. Search and Seizure – You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer. Failure to submit to a search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition.

The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

4. Employment With USPO Approval – You must not work in any type of employment without the prior approval of the probation officer.

5. No Gambling – You must not engage in any form of gambling (including, but not limited to, lotteries, on-line wagering, sports betting) and you must not enter any casino or other establishment, except for the purpose of employment, as approved and directed by the probation officer, where gambling is the primary purpose (e.g., horse tracks, off track betting establishments)

AO 245C (Rev. 11/23) Amended Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties
(NOTE: Identify Changes with Asterisks (*))

Judgment — Page __7__ of __8__

DEFENDANT: MEELAD DEZFOOLI
CASE NUMBER: 2:22-cr-00142-CDS-DJA

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 1,000.00 | *$ 11,793,064.15 | $ WAIVED | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Sealed Restitution List | | *$11,793,064.15 | |
| TOTALS | $ 0.00 | $ 11,793,064.15 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☑ the interest requirement is waived for ☐ fine ☑ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245C (Rev. 11/25) Amended Judgment in a Criminal Case
Sheet 6 — Schedule of Payments
(NOTE: Identify Changes with Asterisks (*))

Case 2:22-cr-00142-CDS-DJA    Document 405    Filed 12/10/25    Page 8 of 30

Judgment — Page    8    of    8

DEFENDANT: MEELAD DEZFOOLI
CASE NUMBER: 2:22-cr-00142-CDS-DJA

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A** ☐ Lump sum payment of $   11,794,064.15   due immediately, balance due

    ☐ not later than _____ , or
    ☑ in accordance with ☐ C, ☐ D, ☐ E, or ☑ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑ Special instructions regarding the payment of criminal monetary penalties:

    Any unpaid balance shall be paid at a monthly rate of not less than 10% of any income earned during incarceration and/or gross income while on supervision, subject to adjustment by the Court based upon ability to pay.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate. |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:
    Preliminary Order of Forfeiture attached, Order of Forfeiture.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:22-CR-00142-CDS-DJA |
| Plaintiff | **Preliminary Order of Forfeiture** |
| v. | |
| MEELAD DEZFOOLI, | |
| Defendant | |

This Court finds Meelad Dezfooli was found guilty of Counts One through Ten of a Ten-Count Superseding Criminal Indictment charging him in Counts One through Three with bank fraud in violation of 18 U.S.C. § 1344(2); in Counts Four through Six with concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and in Counts Seven through Ten with monetary transactions in criminally derived property in violation of 18 U.S.C. § 1957. Superseding Criminal Indictment, ECF No. 97; Minutes of Jury Trial Day 7, ECF No. 239; Jury Verdict, ECF No. 243.

The Jury found, under Fed. R. Crim. P. 32.2(b)(1), (b)(2), and (b)(5), the United States of America has shown the requisite nexus between property set forth in the Forfeiture Allegations of the Superseding Criminal Indictment and the offenses to which Meelad Dezfooli was found guilty. Superseding Criminal Indictment, ECF No. 97; Minutes of Jury Trial Day 7, ECF No. 239; Minutes of Jury Trial Day 8, ECF No. 240; Jury Verdict, ECF No. 243; Forfeiture Jury Instructions and Special Verdict Forms, ECF No. 246.

The following property and money judgments are (1) any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1344, or a conspiracy to commit such offenses; (2) any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1344, specified unlawful activities as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to

commit such offenses; (3) any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of violations of 18 U.S.C. § 1344, or a conspiracy to violate such offenses, affecting financial institutions; (4) any property, real or personal, involved in transactions or attempted transactions in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957, or any property traceable to such property; (5) any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957, specified unlawful activities as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offenses; and (6) any property, real or personal, involved in violations of §§ 1956(a)(1)(B)(i) and 1957, or any property traceable to such property and are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(1), 18 U.S.C. § 982(a)(2)(A), and 21 U.S.C. § 853(p):

1. 2021 Bentley Flying Spur W12 (VIN SCBBB6ZG5MC084930);

2. 2021 Tesla Model 3 (VIN 5YJ3E1EA7MF019125);

3. Real property located at 6116 Chinook Way, Las Vegas, Nevada 89108, more particularly described as:

LOT TWENTY-FOUR (24) IN BLOCK C OF LEWIS HOMES RAINBOW VISTA UNIT NO. 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 30 OF PLATS, PAGE 41 AND AS AMENDED BY A CERTIFICATE OF AMENDMENT RECORDED AUGUST 2, 1985 IN BOOK 2159 AS DOCUMENT NO. 2118935, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA. (APN:138-26-615-070);

4. Real property located at 1829 La Calera Ave., North Las Vegas, Nevada 89084, more particularly described as:

LOT FIFTY-FIVE (55) OF ELDORADO R1 – 60 NO. 13 TM NO. 21, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 123 OF PLATS, PAGE 42 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA. (APN:124-21-314-055);

5. Real property located at 6033 Watermelon Street, North Las Vegas, Nevada, 89081, more particularly described as:

LOT TWENTY-SIX (26) OF FINAL MAP OF TROPICAL / WALNUT – UNIT 1 (A COMMON INTEREST COMMUNITY) AS SHOWN BY MAP THEREOF ON FILE

IN BOOK 121 OF PLATS, PAGE 53, IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA. (APN: 123-30-610-026);

      6.   Real property located at 176 Glen Falls Ave, Henderson, Nevada, 89002, more particularly described as:

LOT 17 IN BLOCK "C" OF PARADISE HILLS NO. 16, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 97 OF PLATS, PAGE 8, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA. EXCEPTING THEREFROM ALL MINERALS, OIL, GAS PETROLEUM, OTHER HYDROCARBON SUBSTANCES AND ALL GEOTHERMAL ENERGY SOURCES IN OR UNDER OR WHICH MAY BE PRODUCED FROM THE WITHIN-DESCRIBED LAND WHICH LIE BELOW A PLANE PARALLEL TO AND FIVE HUNDRED (500) FEET BELOW THE SURFACE OF THE WITHIN-DESCRIBED LAND, FOR THE PURPOSE OF PROSPECTING, EXPLORATION, DEVELOPMENT, PRODUCTION, OR EXTRACTION OF SAID SUBSTANCES BY MEANS OF MINES, WELLS, DERRICKS, AND/OR OTHER EQUIPMENT; PROVIDED, HOWEVER, THAT THE OWNER OF SAID SUBSTANCES SHALL HAVE NO RIGHT TO ENTER THE SURFACE OF THE WITHIN-DESCRIBED LAND NOR TO USE SAID LAND ABOVE SAID PLANE PARALLEL TO AND FIVE HUNDRED (500) FEET BELOW THE SURFACE OF SUCH LAND. (APN: 179-31-212-022); and

      7.   Real property located at 890 Harbor Ave., Henderson, Nevada, 89002, more particularly described as:

LOT 374 OF PEARL CREEK – UNIT NO. 2, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 149 OF PLATS, PAGE 4, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK, COUNTY, NEVADA. (APN: 179-28-814-060)

(all of which constitutes property),

      and in personam criminal forfeiture money judgments of $11,231,186.52 for bank fraud, $2,303,872.56 for concealment money laundering, and $965,276.11 for monetary transactions in criminally derived property, the collected money judgment amount is not to exceed $11,231,186.52, and that the property will be applied toward the payment of the money judgments under Ninth Circuit case law, forfeiture statutes, and Fed. R. Crim. P. 32.2(b)(2)(A).

      This Court finds that on the government's motion, the Court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include subsequently located property or substitute property under Fed. R. Crim. P. 32.2(e) and 32.2(b)(2)(C).

The in personam criminal forfeiture money judgments comply with *United States v. Lo*, 839 F.3d 777 (9th Cir. 2016); *Honeycutt v. United States*, 581 U.S. 443 (2017); *United States v. Thompson*, 990 F.3d 680 (9th Cir. 2021); and *United States v. Prasad*, 18 F.4th 313 (9th Cir. 2021).

This Court finds the United States of America is now entitled to, and should, reduce the aforementioned property to the possession of the United States of America.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the United States of America should seize the aforementioned property.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the United States of America recover from Meelad Dezfooli in personam criminal forfeiture money judgments of $11,231,186.52 for bank fraud, $2,303,872.56 for concealment money laundering, and $965,276.11 for monetary transactions in criminally derived property, and the collected money judgment amount is not to exceed $11,231,186.52.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED all possessory rights, ownership rights, and all rights, titles, and interests of Meelad Dezfooli in the aforementioned property are forfeited and are vested in the United States of America and shall be safely held by the United States of America until further order of the Court.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED the United States of America shall publish for at least thirty (30) consecutive days on the official internet government forfeiture website, www.forfeiture.gov, notice of this Order, which shall describe the forfeited property, state the times under the applicable statute when a petition contesting the forfeiture must be filed, and state the name and contact information for the government attorney to be served with the petition, under Fed. R. Crim. P. 32.2(b)(6). Notice is served on any individual or entity on the date when it is placed in the mail, delivered to a commercial carrier, or sent by electronic mail under Fed. R. Crim. P. 32.2(b)(6)(D) and Supplemental Rule G(4)(b)(iii)-(v).

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that any individual or entity who claims an interest in the forfeited property must file a petition for a hearing to

adjudicate the validity of the petitioner's alleged interest in the property under 21 U.S.C. § 853(n)(2), which petition shall be signed by the petitioner under penalty of perjury under 21 U.S.C. § 853(n)(3) and 28 U.S.C. § 1746, and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED a petition, if any, must be filed with the Clerk of the Court, 333 Las Vegas Boulevard South, Las Vegas, Nevada 89101, within thirty (30) days of the final publication of notice on the official internet government forfeiture site, www.forfeiture.gov, or his receipt of written notice, whichever is earlier.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED a copy of the petition, if any, shall be served upon the Asset Forfeiture Attorney of the United States Attorney's Office at the following address at the time of filing:

> Daniel D. Hollingsworth
> Assistant United States Attorney
> Misty L. Dante
> Assistant United States Attorney
> 501 Las Vegas Boulevard South, Suite 1100
> Las Vegas, Nevada 89101.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED the notice described herein need not be published in the event a Declaration of Forfeiture is issued by the appropriate agency following publication of notice of seizure and intent to administratively forfeit the above-described property.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Clerk send copies of this Order to all counsel of record and three certified copies to the United States Attorney's Office, Attention Asset Forfeiture Unit.

Dated: September 9, 2024

_____
CRISTINA D. SILVA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No.: 2:22-cr-00142-CDS-DJA |
| Plaintiff | **Order Granting Forfeiture Money Judgment in the Amount of $11,231,186.52** |
| v. | |
| Meelad Dezfooli, | |
| Defendant | [ECF No. 365] |

The government moves for entry of a forfeiture money judgment in the amount of $11,231,186.52 pursuant to 18 U.S.C. § 982(a)(2) against defendant Meelad Dezfooli. *See* ECF No. 365. Dezfooli opposes this motion. *See* Opp'n, ECF No. 368.[1] For the reasons stated below, I grant the government's motion.

**I.    Background**

**A.  Procedural Background**

On September 4, 2024, Dezfooli was found guilty of three counts of bank fraud affecting a financial institution (Counts One through Three of the Superseding Indictment), three counts money laundering by concealment (Counts Four through Six of the Superseding Indictment), and four counts of engaging in monetary transactions in property derived from specified unlawful activity (Counts Seven through Ten of the Superseding Indictment). *See* Verdict, ECF No. 243. The jury also found that, pursuant to 18 U.S.C. § 3147, Dezfooli committed the offense charged in Count Ten of the Superseding Indictment while on pretrial release. *Id.*

Dezfooli also requested the retention of the jury to determine the forfeitability of specific property after the entry of the guilty verdict, pursuant to Rule 32.2(b)(5) of the Federal Rules of Criminal Procedure. *See* Forfeiture instr. & special verdict form, ECF No. 246. The jury found

---

[1] This motion is fully briefed. *See* Reply, ECF No. 370.

that two vehicles and five real properties were subject to forfeiture pursuant to 18 U.S.C. §

982(a)(2) based on the bank fraud convictions, and that the vehicles and one real property were

also subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1) based on the money laundering

convictions. *Id.* at 11–15. Upon the government's request, the court entered a preliminary order of

forfeiture as to the vehicles and real property in accordance with the jury's special verdict.[2] *See*

ECF Nos. 249, 251.

### B. Factual Background

The government's evidence showed that Dezfooli conceived and implemented a scheme

to defraud multiple financial institutions by submitting three Paycheck Protection Program

("PPP") loan applications to three different financial institutions, each of which was chock-full

of materially false statements about defendant's business activity and the purpose of the loans.

*See* Order denying mot. for j. of acquittal, ECF No. 372 (summarizing trial evidence). As a result

of his schemes to defraud, Dezfooli received three PPP loans for three separate entities—Best

Floors, Ltd; A-Series LLC; and Nevada Sales Limited—totaling $11,231,186.52. *Id.* The evidence

also showed that Dezfooli then laundered the proceeds of his crimes, including by concealing

the source of the funds through a series of real estate transactions and by engaging in other

transactions with the proceeds. *Id.*

The PPP loan application process generally, and Dezfooli's specifically, was described in

detail by a witness from each of the three defrauded financial institutions. *See id.* at 3–5. The

financial institution witnesses, each of whom was directly involved in the approval and/or

maintenance of the PPP loans at issue, provided testimony regarding the substance and

materiality of the information defendant submitted with his PPP applications and the

customer verification procedures their respective institutions employed to confirm Dezfooli's

identity. *Id.*

---

[2] A jury may—and in this case did—only determine the forfeitability of specific property, not the amount of a money judgment. *See* Fed. R. Crim. P. 32.2(b)(5).

A representative from First Savings Bank (Witness 3)[3] testified about the bank's PPP loan verification procedures, including that applicants needed to provide two forms of identification, corporate documentation such as the articles of organization or bylaws, and the applicant's EIN number. *See* Trial tr. 2, ECF No. 308 at 148–49. A representative from U.S. Bank (Witness 4) described her bank's rigorous four-step verification procedure, which included a "know your customer" review, fraud analysis, payroll verification, and funding review. *See* Trial tr. 3, ECF No. 309 at 69–70.

Specific to Dezfooli's PPP application to U.S. Bank, Witness 4 also described the circumstances that led U.S. Bank to request that defendant provide a utility bill to confirm A-Series LLC's business address. *See id.* at 86–89; Gov't Ex. 211. Similarly, a representative from Cache Valley Bank (Witness 7) walked through her institution's own customer verification process, including but not limited to collecting identity information from beneficial owners, collecting business documents such as articles of incorporation, confirming that the business was in good standing, and confirming tax identification numbers with the Internal Revenue Service ("IRS"). *See* ECF No. 309 at 207–10. Additionally, with loans above $2,000,000, such as the Nevada Sales Limited loan, a senior loan officer would call the number on the application and ask the applicant's primary contact—and only the applicant's primary contact—a series of verification questions. *See id.* at 210–11.

The government also presented evidence regarding the materiality of certain aspects of the PPP loan application. Witness 3, Witness 4, and Witness 7 each testified that the amount of monthly payroll, the number of employees, and the business address reported on the PPP loan application were material to the review and ultimate approval of the loans. *See* Trial tr. 2, ECF No. 308 at 150, 151 (Witness 3); ECF No. 309, at 63–65 (Witness 4); ECF No. 309 at 204–05 (Witness 7). Each of the three bank witnesses also testified that their institutions would not have approved the loan if the applicant had not certified that funds would be used for the

---

[3] Witnesses are being identified based on the order they were called to testify.

intended purpose, i.e., payroll and other limited business expenses. ECF No. 308 at 152–53 (Witness 3); ECF No. 309 at 67 (Witness 4); ECF No. 309 at 207 (Witness 7). Lastly, Witness 3, Witness 4, and Witness 7 each unequivocally stated that their institutions would not have approved a PPP loan if they knew the supporting documentation, and in particular the IRS Form 940, was fictitious. ECF No. 308 at 150–51 (Witness 3); ECF No. 309 at 64 (Witness 4); ECF No. 309 at 205 (Witness 7).

The three bank witnesses also verified the information within Dezfooli's PPP loan applications and the amounts of the loans disbursed. The Best Floors, Ltd. application identified seventy-six total employees and $437,442.61 in monthly payroll, resulting in a PPP loan of $1,093,606.52 being disbursed to defendant on April 20, 2020. ECF No. 308 at 168, 195; Gov't Ex. 101. The A-Series LLC application identified ninety-six total employees and $585,912 in monthly payroll, resulting in a PPP loan of $1,464,780 being disbursed on May 6, 2020. ECF No. 309 at 79–80; Gov't Exs. 200, 201. The Nevada Sales Limited application identified 477 total employees and $3,469,142 in monthly payroll, resulting in a PPP loan of $8,672,800 being disbursed on May 8, 2020. ECF No. 309 at 214; Gov't Ex. 300. Taken as a whole, the three PPP loan applications Dezfooli submitted alleged that he paid each of his 650 employees an average annual salary of approximately $83,000.00 in 2019, amounting to $53,909,959.32 in 2019 payroll.

After establishing the source, materiality, and substance of the information in the PPP loan applications, numerous United States witnesses testified to the veracity—or lack thereof—of that information. While not an exhaustive list, the United States's evidence of false statements in the three PPP loan applications included:

- A court witness coordinator with the IRS (Witness 9) testified that none of Best Floors, Ltd, A-Series LLC, or Nevada Sales Limited had ever filed an IRS Form 940 and further specified that none of the IRS Forms 940 included in the loan applications were actually filed with the IRS. *See, e.g.*, Trial tr. 4, ECF No. 310 at 99, 110, 114. Moreover, several of Dezfooli's former employees testified that they

never had a coworker named Alejandra Rosales or Maria Gonzalez, the purported filers of the three IRS Form 940s. *See id.* at 151 (Witness 10); Trial tr. 5, ECF No. 311 at 144–45 (Witness 15); ECF No. 311 at 95–96 (Witness 14).

- A representative from NV Energy (Witness 5) testified that the utility bill that Dezfooli submitted as part of the U.S. Bank customer verification process had been altered. *See* ECF No. 309 at 129–31. Instead of being the energy bill for A-Series LLC, it was actually a utility bill for defendant's father. *See id.*; Gov't exs. 200, 3.02.

- Representatives from the Nevada Department of Education, Training, and Rehabilitation ("DETR") (Witness 8) and the IRS (Witness 9)—to which small businesses such as Dezfooli's are required to report wage and employee information—testified that the companies never reported more than seventeen employees at any one time and regularly reported far fewer. *See, e.g.*, ECF No. 310 at 54 (DETR), 108 (IRS). The testimony from both DETR and the IRS was supported with ample documentary evidence. *See* Gov't Exs. 4.01–4.04 (DETR), 5.01–5.03 (IRS).

- Consistent with the testimony from DETR and the IRS, several employees and contractors that worked for Dezfooli testified that there were far fewer employees than reported in the three PPP loan applications. Witness 14, who used to print paychecks at Best Buy Flooring, testified that there was a maximum of ten employees working at the company in March 2020. *See* ECF No. 311 at 85. Witness 15, another former employee, said that there were less than 12 employees at Best Buy Flooring in 2019. *See id.* at 143–44. Witness 16, a third former employee, testified that there were a maximum of thirty people working for the company at any one time. *See id.* at 161. And Witness 18, a former contractor,

testified that the business had between eight and twelve employees and twenty-four to forty contractors at any one time. *See id.* at 206.

- The property manager for the address listed on all three PPP applications (Witness 6) identified Dezfooli as the CEO of Best Buy Flooring and his primary point of contact. *See* ECF No. 309 at 170–71. Witness 6 testified that Dezfooli and his company were evicted from the property located at 1621 East Sunset Road in March 2019, over a year prior to Dezfooli's submission of the three PPP loan applications listing that address as the business address for each of the three businesses for which Dezfooli sought PPP loans. *See id.* at 174, 179–80.

- Special Agent Leah Chapman of IRS Criminal Investigation ("SA Chapman") testified about her analysis of Dezfooli's bank accounts in 2019 and compared it to the payroll expenditures Dezfooli reported in the three PPP loan applications. *See* Gov't Ex. 469; Trial tr. 6, ECF No. 312 at 93–94. Per SA Chapman's analysis, Dezfooli's PPP loan applications would have amounted to $53,909,959.32 in 2019 payroll expenses, while Dezfooli's own bank accounts themselves totaled only $1,995,179.99 in withdrawals during the entire calendar year. *Id.*

II.    **Legal Standard**

A forfeiture order may be sought as a money judgment. *See* Fed. R. Crim. P. 32.2(b)(1)(A), (2)(A); *see also United States v. Nejad*, 933 F.3d 1162, 1165 (9th Cir. 2019) ("[W]e see nothing in *Honeycutt* (or any other recent Supreme Court decision) that would allow us to overrule our prior precedent permitting entry of a personal money judgment . . . ."); *United States v. Lo*, 839 F.3d 777, 792–94 (9th Cir. 2016) (upholding a forfeiture money judgment in the amount the defendant received from mail and wire fraud offenses).

Forfeiture statutes "mandate[] that a defendant forfeit a very specific amount—the proceeds of his criminal activity," which can be in the form of a money judgment. *United States v. Casey*, 444 F.3d 1071, 1076 (9th Cir. 2006). This is true regardless of the defendant's ability to

satisfy the judgment at the time of sentencing. *Id.* at 1074 ("imposition of a money judgment on a defendant" who cannot currently satisfy it "furthers the remedial purposes of the forfeiture statute" because it requires the defendant to "disgorge their ill-gotten gains, even those already spent").

The court, and not the jury, determines the appropriate amount of a forfeiture money judgment. *United States v. Daniel*, 676 F. App'x 675, 678 (9th Cir. 2017) (defendant does not have a constitutional or statutory right to a jury determination on the forfeiture money judgment); *United States v. Christensen*, 828 F.3d 763, 821–22 (9th Cir. 2016) (same). This determination is "based on evidence already in the record, including any written plea agreement, and any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B).

### III.    Discussion

The government argues in its motion that the evidence at trial demonstrates that $11,231,186.62 is the amount Dezfooli obtained in the course of the offenses of conviction. ECF No. 365 at 9–11. In response, Dezfooli raises four arguments.

He first argues that this motion is premature given the pending motion for judgment of acquittal and sentencing has yet to occur. ECF No. 368 at 3–4. However, as the government correctly points out in its reply, in advance of sentencing the court must "promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment." Fed. R. Crim. P. 32.2(b)(2)(A). This is not a final order but a preliminary one, which will allow the parties ample time to seek to revise or modify the order before it becomes final. *See* Fed. R. Crim. P. 32.2(b)(2)(B) ("[T]he court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant under Fed. R. Crim. P. 32.2(b)(4)."). Moreover, his motion for judgment of acquittal has now been denied. *See* Order, ECF No. 372.

Second, Dezfooli argues that "subsequent proceedings are mandated if the government attempts to enforce a money judgment by seeking the forfeiture of property not listed in the jury's special verdict[.]" ECF No. 368 at 5. Federal Rule of Criminal Procedure 32.2(c)(1) specifically states that "no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment." As the Ninth Circuit explained in *Nejad*, "once the government identifies untainted property that it believes may be used to satisfy a personal money judgment, it must return to the district court and establish that the requirements of § 853(p) have been met." *Pizzuto v. Blades*, 933 F.3d 1166, 1166 (9th Cir. 2019). This has no bearing on what the government currently seeks as there has been no identification of substitute property it seeks to use to enforce the forfeiture judgment it requests—the government simply asks for the preliminary forfeiture judgment in a sum certain. Thus, although Dezfooli is correct about the law, it is not applicable to these circumstances. Should the government wish to take possession for purposes of forfeiture of property unlisted in the jury's special verdict form, it would be subject to additional proceedings.

Third, Dezfooli argues that the money judgment must be reduced by the amount the government recoups through the sale of the five properties identified as forfeitable in the jury's special verdict. ECF No. 368 at 5–6. He likewise argues that "in the event this Court allows substitute properties to be seized in the future, the market value of those properties must also be credited against the potential money judgement." *Id.* at 6. In its reply, the government does not appear to contest this: "once the specific properties listed in the forfeiture order are sold, the proceeds of those sales will be credited against the personal money judgment." ECF No. 370 at 3. However, the government does caveat that this credit should not be applied until the properties have been sold. *Id.* (citing *United States v. Teves*, 621 F. App'x 486, 487–88 (9th Cir. 2015) (finding no authority to offset amount of money judgment by the value of seized property before it is

sold)). I agree. Thus, Dezfooli will receive credits toward the forfeiture figure for the houses (and other property)[4] once they have been sold.

Finally, Dezfooli argues that should I deny his post-trial motions—which I do in several contemporaneous orders—he will "appeal his convictions and the jury's special verdict," and in so doing, "will request a stay of the final order of forfeiture and any potential money judgment." ECF No 368 at 6. He sets out the test for staying a forfeiture order. *Id.* at 6–7 (citing *United States v. Peters*, 784 F. Supp. 2d 234, 235 (W.D.N.Y. 2011)). As the government aptly points out in its reply, for the court to consider staying an order, the order must first be in place. ECF No. 370 at 3–4. For this reason, together with the fact that his post-trial motion has now been denied, Dezfooli's fourth argument does not bear on my conclusion.

I find that, flushed with cash, Dezfooli embarked on a systematic effort to launder the proceeds of his crimes. Through SA Chapman and others, the government presented substantial testimonial and documentary evidence of Dezfooli's money laundering activity. Accordingly, the government is entitled to the relief it seeks, so their motion for a forfeiture money judgment is granted.

## III. Conclusion

IT IS HEREBY ORDERED that the government's motion for a forfeiture money judgment in the amount of $11,231,186.52 **[ECF No. 365] is GRANTED.**

Dated: July 16, 2025

_____
Cristina D. Silva
United States District Judge

---

[4] Although the special verdict form also found a nexus to two vehicles, the government asserts that neither has been located at this time. ECF No. 370 at 3 n.1.

9

JASON M. FRIERSON
United States Attorney
Nevada Bar No. 7709
DANIEL D. HOLLINGSWORTH
Assistant United States Attorney
Nevada Bar No. 1925
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Daniel.Hollingsworth@usdoj.gov
Attorneys for the United States

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:22-cr-00142-CDS-DJA |
| Plaintiff | **Order Approving Stipulation for Entry of Order of Forfeiture as to Eldorado Third Community Association** |
| v. | |
| MEELAD DEZFOOLI, | [ECF No. 313] |
| Defendant | |

The United States of America and Eldorado Third Community Association, and its counsel, Ryan W. Reed of LEACH KERN GRUCHOW SONG, agree as follows:

1.     The Grand Jury sitting in Las Vegas, Nevada, returned a Ten-Count Superseding Criminal Indictment against Meelad Dezfooli charging him in Counts One through Three with bank fraud in violation of 18 U.S.C. § 1344(2); in Counts Four through Six with concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and in Counts Seven through Ten with monetary transactions in criminally derived property in violation of 18 U.S.C. § 1957. Superseding Criminal Indictment, ECF No. 97.

2.     The jury found Meelad Dezfooli guilty of Counts One through Ten of a Ten-Count Superseding Criminal Indictment, and the jury found, and the Court ordered, forfeiture of property set forth in the Forfeiture Allegations of the Superseding Criminal Indictment. Superseding Criminal Indictment, ECF No. 97; Minutes of Jury Trial Day 7, ECF No. 239; Minutes of Jury Trial Day 8, ECF No. 240; Jury Verdict, ECF No. 243; Forfeiture Jury Instructions and Special Verdict Forms, ECF No. 246; Preliminary Order of Forfeiture, ECF No. 251.

3.      On October 24, 2024, Eldorado Third Community Association filed a Notice of Claim and Declarations in Support of their Claim for the real property located at 1829 La Calera, North Las Vegas, Nevada 89084, ECF No. 281.

4.      Eldorado Third Community Association knowingly and voluntarily agrees to the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the following property:

1. 2021 Bentley Flying Spur W12 (VIN SCBBB6ZG5MC084930);

2. 2021 Tesla Model 3 (VIN 5YJ3E1EA7MF019125);

3. Real property located at 6116 Chinook Way, Las Vegas, Nevada 89108, more particularly described as:

LOT TWENTY-FOUR (24) IN BLOCK C OF LEWIS HOMES RAINBOW VISTA UNIT NO. 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 30 OF PLATS, PAGE 41 AND AS AMENDED BY A CERTIFICATE OF AMENDMENT RECORDED AUGUST 2, 1985 IN BOOK 2159 AS DOCUMENT NO. 2118935, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA. (APN:138-26-615-070);

4. Real property located at 1829 La Calera Ave., North Las Vegas, Nevada 89084, more particularly described as:

LOT FIFTY-FIVE (55) OF ELDORADO R1 – 60 NO. 13 TM NO. 21, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 123 OF PLATS, PAGE 42 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA. (APN:124-21-314-055);

5. Real property located at 6033 Watermelon Street, North Las Vegas, Nevada 89081, more particularly described as:

LOT TWENTY-SIX (26) OF FINAL MAP OF TROPICAL / WALNUT – UNIT 1 (A COMMON INTEREST COMMUNITY) AS SHOWN BY MAP THEREOF ON FILE IN BOOK 121 OF PLATS, PAGE 53, IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA. (APN: 123-30-610-026);

6. Real property located at 176 Glen Falls Ave, Henderson, Nevada 89002, more particularly described as:

LOT 17 IN BLOCK "C" OF PARADISE HILLS NO. 16, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 97 OF PLATS, PAGE 8, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA. EXCEPTING THEREFROM ALL MINERALS, OIL, GAS PETROLEUM, OTHER

HYDROCARBON SUBSTANCES AND ALL GEOTHERMAL ENERGY SOURCES IN OR UNDER OR WHICH MAY BE PRODUCED FROM THE WITHINDESCRIBED LAND WHICH LIE BELOW A PLANE PARALLEL TO AND FIVE HUNDRED (500) FEET BELOW THE SURFACE OF THE WITHIN-DESCRIBED LAND, FOR THE PURPOSE OF PROSPECTING, EXPLORATION, DEVELOPMENT, PRODUCTION, OR EXTRACTION OF SAID SUBSTANCES BY MEANS OF MINES, WELLS, DERRICKS, AND/OR OTHER EQUIPMENT; PROVIDED, HOWEVER, THAT THE OWNER OF SAID SUBSTANCES SHALL HAVE NO RIGHT TO ENTER THE SURFACE OF THE WITHIN-DESCRIBED LAND NOR TO USE SAID LAND ABOVE SAID PLANE PARALLEL TO AND FIVE HUNDRED (500) FEET BELOW THE SURFACE OF SUCH LAND. (APN: 179-31-212- 022); and

7. Real property located at 890 Harbor Ave., Henderson, Nevada, 89002, more particularly described as:

LOT 374 OF PEARL CREEK – UNIT NO. 2, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 149 OF PLATS, PAGE 4, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK, COUNTY, NEVADA. (APN: 179-28-814-060)

(all of which constitutes property).

5.      Eldorado Third Community Association knowingly and voluntarily agrees to forfeit the property to the United States.

6.      Eldorado Third Community Association knowingly and voluntarily agrees to relinquish all possessory rights, ownership rights, and all rights, titles, and interests in the property.

7.      Eldorado Third Community Association knowingly and voluntarily agrees to waive its right to any civil administrative forfeiture proceedings, any civil judicial forfeiture proceedings, or any criminal forfeiture proceedings (all of which constitutes proceedings) of the property.

8.      Eldorado Third Community Association knowingly and voluntarily agrees to waive service of process of any and all documents filed in this action or any proceedings concerning the forfeiture of the property arising from the facts and circumstances of this case.

9.      Eldorado Third Community Association knowingly and voluntarily agrees to waive any further notice to it, its agents, or its attorneys regarding the forfeiture and disposition of the property.

10. Eldorado Third Community Association knowingly and voluntarily agrees not to file any claim, third-party petition, or other documents in any proceedings concerning the property; and agrees not to contest, and agrees not to assist any other person and entity to contest, the forfeiture.

11. Eldorado Third Community Association knowingly and voluntarily agrees to withdraw any claims, third-party petitions, or other documents it filed in any proceedings concerning the property.

12. Eldorado Third Community Association knowingly and voluntarily agrees to waive the statute of limitations, the CAFRA requirements, Fed. R. Crim. P. 7, 11, and 32.2, the constitutional requirements, and the constitutional due process requirements of any forfeiture proceedings concerning the property.

13. Eldorado Third Community Association knowingly and voluntarily agrees to waive its right to a hearing on the forfeiture of the property.

14. Eldorado Third Community Association knowingly and voluntarily agrees to waive all constitutional, statutory, legal, equitable rights, defenses, and claims regarding the property in any proceedings, including, but not limited to any constitutional or statutory double jeopardy defense or claim.

15. Eldorado Third Community Association knowingly and voluntarily agrees to waive any and all constitutional, statutory, legal, equitable rights, defenses, and claims regarding the property in any proceedings, including, but not limited to, the Excessive Fines Clause and the Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution

16. Eldorado Third Community Association knowingly and voluntarily agrees to the entry of the Final Forfeiture Order of the property to the United States.

17. Eldorado Third Community Association understands the forfeiture of the property shall not be treated as satisfaction of any assessment, restitution, fine, cost of imprisonment or any other penalty that may be imposed in addition to forfeiture.

/ / /

4

18.    Eldorado Third Community Association knowingly and voluntarily agrees to the conditions set forth in this Stipulation for Entry of Order of Forfeiture as to Eldorado Third Community Association and Order (Stipulation).

19.    Eldorado Third Community Association knowingly and voluntarily agrees to hold harmless the United States, the United States Department of Justice, the United States Attorney's Office for the District of Nevada, the United States Department of the Treasury, the United States Internal Revenue Service, their agencies, their agents, and their employees from any claim made by it or any third party arising from the facts and circumstances of this case.

20.    Eldorado Third Community Association knowingly and voluntarily releases and forever discharges the United States, the United States Department of Justice, the United States Attorney's Office for the District of Nevada, the United States Department of the Treasury, the United States Internal Revenue Service, their agencies, their agents, and their employees from any and all claims, rights, or causes of action of any kind that Eldorado Third Community Association now has or may hereafter have on account of, or in any way growing out of, the seizures and the forfeitures of the property in the civil administrative forfeitures, the civil judicial forfeitures, and the criminal forfeitures.

21.    Each party acknowledges and warrants that its execution of this Stipulation is free and is voluntary.

22.    This Stipulation contains the entire agreement between the parties.

23.    Except as expressly stated in this Stipulation, no party, officer, agent, employee, representative, or attorney has made any statement or representation to any other party, person, or entity regarding any fact relied upon in entering into this Stipulation, and no party, officer, agent, employee, representative, or attorney relies on such statement or representation in executing this Stipulation.

24.    After the United States District Court has signed and entered the Final Forfeiture Order and this Stipulation, after the United States sells the property, and after payment of outstanding taxes, expenses of custody, and sale costs incurred by Internal

Revenue Service, within a practicable time thereafter for the United States, the United States knowingly and voluntarily agrees Eldorado Third Community Association will receive payment from the sale proceeds of the property. When the conditions in this paragraph are met and the property is sold, the United States will transfer to Eldorado Third Community Association through Ryan W. Reed:

    A.    $1,882.90 and

    B.    $1,000 in attorney's fees.

25.    Eldorado Third Community Association knowingly and voluntarily agrees to fill out the United States Department of the Treasury Automated Clearing House (ACH) form accurately and correctly and submit it to the United States Attorney's Office so the payment will be disbursed by electronic fund transfer to Counsel's IOLTA account for payment to Eldorado Third Community Association.

26.    If, for any reason, the total to be paid to Eldorado Third Community Association and any other third-party petitioners equals or exceeds the fair market value of the property, this Stipulation shall be null and void, and the United States may allow Eldorado Third Community Association and other parties to foreclose on the property.

27.    The persons signing this Stipulation warrant and represent that they have full authority to execute this Stipulation and to bind the entities, on whose behalf they are signing, to the terms of this Stipulation.

28.    This Stipulation shall be construed and interpreted according to federal forfeiture law and federal common law. The jurisdiction and the venue for any dispute related to, and/or arising from, this Stipulation is the unofficial Southern Division of the United States District Court for the District of Nevada, located in Las Vegas, Nevada.

29.    This Stipulation shall not be construed more strictly against one party than against the other merely by virtue of the fact that it may have been prepared primarily by counsel for one of the parties; it being recognized that both parties have contributed substantially and materially to the preparation of this Stipulation.

/ / /

1        IT IS HEREBY CERTIFIED, under 28 U.S.C. § 2465(a)(2), that there was

2    reasonable cause for the seizure and forfeiture of the property.

3

4    DATED: __12/20/24__          DATED: _____

5    LEACH KERN GRUCHOW SONG      JASON M. FRIERSON
                                  United States Attorney
6

7    _____      _____
     RYAN W. REED                 ASSET FORFEITURE ATTORNEY
8    Counsel for ELDORADO THIRD   Assistant United States Attorney
     COMMUNITY ASSOCIATION
9    DATED: __12/20/2024__

10

11   _____
12   ELDORADO THIRD
     COMMUNITY ASSOCATION
13

14

15
                                  IT IS SO ORDERED:
16

17

18                                _____
                                  CRISTINA D. SILVA
19                                UNITED STATES DISTRICT JUDGE

20                                DATED: _____

21

22

23

24

25

26

27

28

7

IT IS HEREBY CERTIFIED, under 28 U.S.C. § 2465(a)(2), that there was reasonable cause for the seizure and forfeiture of the property.


DATED: _____        DATED: _____December 20, 2024___

LEACH KERN GRUCHOW SONG        JASON M. FRIERSON
                               United States Attorney


_____        _/s/ Daniel D. Hollingsworth_____
RYAN W. REED                            ASSET FORFEITURE ATTORNEY
Counsel for ELDORADO THIRD              Assistant United States Attorney
COMMUNITY ASSOCIATION

DATED: _____


_____
ELDORADO THIRD
COMMUNITY ASSOCATION


It is hereby ordered that the parties' stipulation **[ECF No. 313] is approved**.


_____
CRISTINA D. SILVA
UNITED STATES DISTRICT JUDGE

DATED: __December 27, 2024_____